## H. KEANE *v.* W. P. FISHER & CO.

A sale is not divested of its character as a cash sale by a delivery before payment.

Where a vendor who sells goods for cash consents that the purchaser may ship them before payment, he can not hold the purchaser liable for disposing of the goods before payment, under the 10th section of the act of 1840, entitled: An act to abolish imprisonment for debt.

Where the usage proved is not in conflict with the law, the court may call the attention of the jury to it.

A dormant partner need not be joined in an action by the ostensible partnership.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Race & Foster*, for plaintiff ;

Counsels for defendants have most ingeniously endeavored to divert the mind of the court from this issue, by quoting the following authorities, viz :

6 Cowen, 113, *Chapman* v. *Lathrop*, 6 Wend., 8, *Lupin* v. *Marie*, and 22 Wend., 664, *Russell* v. *Minor*. Do these authorities fairly meet the issue tendered? They go to the point, that if there is a condition precedent to a sale, the delivery of the goods does not pass the property, and if the condition precedent should be waived by the vendor, then the ownership in the property would pass by delivery, and an action of trover would not lie. But was there any condition precedent in the sale in the case at bar, or any waiver of any such condition? Certainly not. We sold in accordance with the general and well known custom of trade in this city, for cash, and fully delivered the goods into the custody of the defendants, not upon condition that they should first pay us the money, but upon condition that they would pay it when demanded, whether that be the next minute, hour, day or week. According to the custom of our merchants, all sales of merchandise are considered to be for cash, unless there has been a positive agreement to the contrary. Was there any such agreement in this case?

"Known customs enter into and form a part of the contract without any mention being made thereof." 5 Pick., *Loring* v. *Gurney*. "Customs are sometimes allowed to prevail, contrary to the rules of common law, etc." 9 Wend., 349 *Wilcox* v. *Wood*. A question of fact, and of custom, is one properly for the jury; also the question as to what constitutes a credit sale. 1 Story R., 43 ; *Forester* v. *Boardman*. The antiquity of the usage is of no importance, 12 Pick., 428, *Thompson* v. *Hamilton*. See also, 2 Pet. 148 ; 6 Pet. 715 ; and 6 Dauce, 382, *Wallace* v. *Bradshaw*.

The difference between the common law and our special statutes is very obvious. The doctrine contended for by Mr. Hunt, with so much zeal, cannot be maintained in the interpretation of the 10th section of the Act of 1840, for this. It conflicts with the letter of the law, and besides, would render the statute useless and inoperative. There never could a case arise under the act; if that be the correct construction. If in order to constitute a cash sale, the payment of the price and the delivery of the goods must be simultaneous, what is the meaning of the following extract from the 10th section of said law of 1840? "Or shall purchase property for cash, the delivery whereof shall be made to him, and then shall sell or dispose of the same without paying his vendor, or shall remove the same beyond the reach of such vendor, or shall conceal or cover the same in any manner so that his vendor cannot render the same liable, etc." "Any of such facts shall be held presumptive evidence of *fraud*, liable, however, like all other presumptions, to be disproved."

How can a purchaser of goods have time and opportunity to sell, dispose of, remove beyond the reach of his vendor, or conceal, or cover, in any manner whatsoever, merchandize purchased for cash, when the payment for them was simultaneous with their delivery? Do your Honors not perceive that such an interpretation violates the plainest rules of construction and interpretation, as laid down in our Civil Code, 13 to 20.

*Randell Hunt & J. Ad. Rozier*, for defendants :

Supreme Court of New Jersey, June term, 1853, *Stewart & Mettler* v. *Scudder*.

1. A commission merchant in New York receiving a parcel of corn, with orders to sell for cash, sold it to a person, at the time of sale, in good credit. The sale was made on Monday, and the price was called for on the succeeding Friday, but not paid. On the next Monday, it became known that the purchaser had failed. The loss was held to fall on the commission merchant, notwithstanding an attempt was made to set up a usage in New York, that where a sale is made for cash, the purchaser has three or four days to pay the money.

2. A usage to control or interpret contracts, must be known, certain, uniform, reasonable, and not contrary to law.

3. *Semble.*—That such usage as was set up in this case, was unreasonable and illegal.

Another case in our favor is to be found in 8 Vermont, p. 252, *Bliss* v. *Arnold, Leggett and Lapham*. The usage set up and sworn to by the witnesses was, "that the purchaser for cash takes the article into his possession and to his own store, for the purpose of examination, and to collect the cash, which he is to pay within a few days. The usual time of collecting cash payments in

H. KEANE
*v.*
FISHER & Co.

New York, with commission merchants, varies from twenty-four days to a week succeeding the sale. It is our belief that it would be difficult, if not impossible, to conduct cash sales on any other principle. In New York there must be some confidence between man and man in dealing; and to require cash at the very moment of delivery, would impede and interrupt much the merchant's business." To this the court says, "In all sales for cash, the money must be paid when the property is delivered."

It is wholly inconsistent to claim that a sale for cash, means a sale on a credit of a week or ten days.

We cannot believe there is any such custom recognized as law, and we find a decision of Judge Gardner, directly opposed to any such custom, as binding on the person who entrusts property to a commission merchant. On the subject of customs, they must be certain, must be proven and construed strictly.— 1 Bl. Com., 75, 76.

Where a sale of goods is made to be paid for in cash, or securities, and a delivery is made without payment, and without any demand of the price, or securities, the delivery is absolute, and vests title in vendee. Evidence of a usage that in such sales, the vendor retained his lien, until the conditions of the sale were complied with, was rejected, because such a usage would be contrary to law.

A custom of trade, to the effect, that on a sale of goods for cash, they are delivered to the buyer, without payment or demand of payment, and after a few days a bill of the goods is sent to the buyer, and the price demanded, and in the meantime the seller retains a lien on the goods for the price, and that such a delivery is conditional, is contrary to law and invalid.—*Smith* v. *B. Ligne et al.*, B. Saudf., 203.

A general usage, the effect of which is to control the rules of law, or which contradict a settled rule of commercial law, is inadmissible. The clear and explicit language of a contract may not be enlarged or restricted by proof of a custom or usage. The indiscriminate resort to testimony of usages and customs of trade, to control the construction and the results of contracts, is liable to dangerous abuses; and such testimony is to be admitted with great caution. —*Hone* v. *The Mutual Safety Insurance Co.*, 3 Sandf., 137.

This court, in *Bonham* v. *Overton, Chism & Co.*, 6 Ann., p. 765, clearly discountenance the usage set up, and do not consider it certain, frequent, general, and long established.

Braud (30), Foley (33), and the other witnesses of plaintiff, testify, "that the custom in sales of sugar is to send in the bill the day of sale or the day after, and send for the money two, three or four days after, according to circumstances (33)—some extend the time to ten days. *Agar*, who sold the sugar, says (page 23), "The bills for sugar are always sent in on the day of the purchase, but the demand for payment is delayed for two, three or five days."— This is his idea of the usage of trade. This alleged usage is uncertain and vague. The clear and explicit language of the contract cannot be enlarged or restricted by this usage set up, and moreover it is invalid. *Agar* reposed trust and confidence in *Fisher*, and therefore the sale was made on credit.

SLIDELL, C. J. The plaintiff alleges that *W. P. Fisher & Co.*, a commercial firm doing business at New Orleans and composed of *W. P. Fisher*, a resident of New Orleans, and *King*, a resident of St. Louis, purchased of him forty-five hogsheads of sugar for cash, but have failed to pay the price stipulated, and have disposed of the same, so that the plaintiff cannot now make the merchandize liable for the payment of his claim, and have incurred the pains and penalties of the Act of 1840. The arrest and condemnation of *Fisher* was prayed for, and a judgment against the firm. From a judgment in conformity with the prayer of the petition, *Fisher* has appealed.

The proceeding is based upon the 10th section of the Act of 1840, which reads as follows: "That if a debtor, &c., shall purchase property for cash, the delivery whereof shall be made to him, and then shall sell or dispose of the same without paying his vendor, or shall remove the same beyond the reach of such vendor, or shall conceal or cover the same in any manner, so that the

vendor cannot render the same liable, any of such facts shall be held presump-  H. KEANE
tive evidence of fraud, liable, however, like all other presumptions, to be dis-  FISHER & Co.
proved."

By the 13th section, when a defendant is found guilty of defrauding a cre-
ditor, in the manner mentioned in the 10th or 11th section, the court may con-
demn him to be imprisoned for a period not exceeding three years, &c.

The first and most important question to be considered is, whether this was
a cash sale, as contended by the plaintiff, or a credit sale, as contended by the
defendants.

The only witness personally cognizant of the circumstances of the sale, was
a clerk of the plaintiff, who made it. He says, the sugar, which consisted of
two lots, in all forty-five hogsheads, was sold for cash, and *Fisher* made no
objection to the terms at the time. On cross-examination, he says: "*Fisher*
told me the river was frozen up at St. Louis, and asked me if *Keane* was quick
with his bills. I told him I.thought not. He asked me if I could not wait a
few days. I told him Mr. *Keane* was not quick with his bills; that he let
them run a few days. *Fisher* went on and looked at the lot, and said he would
take the sugars. He then gave me his name and the name of the boat on
which he wished them shipped, that is, after he had looked at another lot and
had taken both lots. I then went on and had the sugar weighed immediately.
I followed *Fisher's* instructions, and shipped twenty-seven hogsheads (being one
lot) on the Iowa, and I think I gave *Fisher* the dray receipt for the same. The
Iowa, I think, was bound for St. Louis. When Mr. *Fisher* asked me my
terms, I told him cash. Mr. *Fisher* then asked me if I could not give him a
few days; he told me his reason for asking for a few days, was that the river
was frozen up. I told him that Mr. *Keane* was not quick with his bills, that
he generally allowed them to run five or six days. We then passed to the
other lot of sugar, and Mr. *Fisher* said he would take the whole forty-five hogs-
heads."

An attentive consideration of this testimony has brought us to the same con-
clusion to which the jury came, that is, that the sale was a cash sale, and that
no agreement was made by the seller, which would have prevented him from
demanding payment at any time after the delivery. The purchaser did not ask
a stipulation for delay; his question upon being told the sale was cash, assumed
that the bill would be so made out, and the inquiry was whether the seller was
in the habit of collecting his bills quickly. If suit had been brought for the
purchase money the day after the sale, and the vendee had pleaded by way of
exception, that the suit was premature, could the exception have been sustain-
ed? Clearly not; the facts would not have furnished an essential element of a
dilatory exception, an agreement for delay.

That a sale is not divested of its character as a cash sale by a delivery be-
fore payment, is obvious, although it is true the seller is not bound to deliver
before payment.

The evidence is quite full to the effect that sugar is usually sold for cash, and
is usually delivered before payment, the seller sending his bill afterwards; this
course however being considered a mere act of courtesy and not of right. We
do not see anything in this usage inconsistent with the law of sale as enun-
ciated in our Code; and the Statute of 1840 recognizes such a course of busi-
ness by the clearest implications. Indeed, if to constitute a *cash* sale the pay-

H. KEANE
v.
FISHER & Co

ment of the price and the delivery of the goods must be simultaneous, the clause of the statute for the protection of vendors, would be idle and inoperative.

The only serious difficulty we have had in coming to a conclusion to affirm the verdict in this case, arises from the fact that the vendor consented that a part of the goods should be shipped by the purchaser before payment. It seems to us that the plaintiff cannot hold the purchaser under the statute for thus disposing of those goods before payment, when he has himself assented to such disposition. But with regard to the residue of the sugar, the lot of 18 hogsheads, there is nothing aside, from the above circumstance, to take the case out of the statute, and we do not think the rights of the vendor as regards that lot, can be affected by the waiver of them with respect to the other.

Although the District Judge refused to charge the jury in the precise words suggested by the defendants' counsel, we think his charge as given was in substantial accordance with law, was not calculated to mislead the jury, and gave the defendants the benefit of the agreement suggested in the defendants' application, if the jury should think such an agreement proved. In saying to the jury that the usage of merchants as to sales of sugar on the levee, in this city, was to be regarded as a guide for their decision, the court no doubt alluded to the usage of which we have already spoken. This usage not being in conflict with law, the court did not err in directing the attention of the jury to it, and the language used in doing so, was not calculated to induce the jury to give the usage an undue consideration in estimating the act and understanding of the parties.

Under the pleadings and proceedings in the cause, the finding of guilty of fraud is clearly referrible to *Fisher*, the only party arrested, and the only party whose punishment was prayed for.

The presumption of fraud which the statute raises from the fact of buying for cash and disposing of the merchandize without paying the vendor, has not been satisfactorily disproved by other evidence.

It appears that one *Sierra* had a joint interest with *Keane* in certain sugar adventures, of which this was one. This fact appeared at the trial from the testimony of a witness. But as it also appeared that the business was done wholly in *Keane's* name, *Sierra's* interest being dormant, we think the court did not err in telling the jury the plaintiff might recover in his own name. See *Norman* v. *Gillett*, 2 Taunton, 325 ; Collyer, on Partnership, 394.

Judgment affirmed with costs.

Application for re-hearing refused.